Willie Ray **HARRELL**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 15171.

United States Court of Appeals,
Fifth Circuit.

March 25, 1955.

Paul S. Jones, Grove Hill, Ala., Harry Seale, Mobile, Ala., for appellant.

Percy C. Fountain, U. S. Atty., Mobile, Ala., for appellee.

Before HOLMES and RIVES, Circuit Judges, and WRIGHT, District Judge.

WRIGHT, District Judge.

Appellant was convicted on each of three counts in an indictment charging perjury.[1] He asks for reversal of that conviction on the ground that certain instructions given to the jury by the trial court were improper, that the trial court determined the materiality of the alleged perjured testimony itself and refused to submit that issue to the jury, and that the admission, over objection, of certain testimony taken at the former trial in which the alleged perjury occurred was improper and prejudicial. For the reasons hereinafter assigned, the points raised by the appellant are without merit and the conviction must be affirmed.

Appellant was chief deputy sheriff of Clarke County, Alabama. Jenkins Hill, the sheriff of Clarke County, one Sam Deas and one Pat Rone, not law enforcement officers, were charged with conspiracy to violate certain laws of the

1. 18 U.S.C. § 1621.

United States pertaining to the unlawful manufacture and sale of distilled spirits. The case against these defendants was tried twice, the first ending in a mistrial, the second in an acquittal of all three. The perjury charge here arose out of Harrell's testimony in the second trial. The perjured testimony consisted of Harrell's denying that one of the defendants in the former case, Pat Rone, had operated the motorboat which brought him, Harrell, and a deputy sheriff from Monroe County, Alabama, to a houseboat in the Tombigbee River, at which houseboat one Carlos Blackwell, a witness for the Government in both of the liquor trials, was arrested.

In the first liquor trial, the Government relied heavily on Blackwell's testimony for conviction. In fact, Blackwell, if his testimony is to be believed, definitely connected the defendants, Sheriff Hill, Deas and Rone, in a conspiracy to violate the liquor laws. Shortly before the second trial, Hill received information from Rone that a still, which he thought belonged to Blackwell, was operating on a certain houseboat in the Tombigbee River, which separates Clarke County on the west from Washington County. Hill and Rone made a trip to this houseboat and determined that there was in fact a still operating there. The next day Hill made arrangements for Pat Rone to take the deputy sheriff of Monroe County, which adjoins Clarke County on the east, and the appellant, Harrell, chief deputy sheriff of Clarke County, to the houseboat to lie in wait for the operator of the still to come aboard. Harrell testified that while so waiting, Carlos Blackwell came aboard the houseboat and was placed under arrest for operating the still. Blackwell, in his testimony at the second liquor trial, admitted that he was arrested in the vicinity of the houseboat but emphatically denied his connection with the illicit still. He testified that it was his practice to hunt deer in the vicinity in which he was arrested and that at the time of his arrest he had a deer on the bank of the river.

Harrell testified as a witness for the defendants in the second liquor trial. After testifying as to the arrest of Blackwell, he then testified that Blackwell's reputation for veracity was bad and that he should not be believed under oath. On cross-examination, among others, he was asked these three questions: "Now, as a matter of fact, Mr. Harrell, the defendant Pat Rone carried you all down there in a boat, when you went to that houseboat, didn't he?" "Will you tell us, under oath, that Mr. Pat Rone was not in the boat with you?" and "Had you ever been to that houseboat in company with Pat Rone?" To each of these questions, Harrell replied in the negative and each of his answers is the basis for a count in the indictment against him.

The record shows that the trial judge charged the jury that the answers to the questions given by Harrell were material to the issue on trial. Appellant takes exception to this instruction, both for the reason that it is within the province of the jury to determine the materiality of the alleged perjured testimony, and for the further reason that the alleged perjured testimony was not in fact material to the issue then on trial.

Appellant's contention that the issue of materiality is for the jury is clearly without merit. Whatever may be the rule in state courts, it is clear that in perjury trials conducted in federal courts, the issue of materiality of the alleged perjury is for the court and not the jury. Sinclair v. United States, 279 U.S. 263, 49 S.Ct. 268, 73 L.Ed. 692; United States v. Marachowsky, 7 Cir., 201 F.2d 5; United States v. Moran, 2 Cir., 194 F.2d 623, certiorari denied 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362; Travis v. United States, 10 Cir., 123 F. 2d 268; Blackmon v. United States, 5 Cir., 108 F.2d 572; United States v. Slutzky, 3 Cir., 79 F.2d 504; Carroll v. United States, 2 Cir., 16 F.2d 951.

Nor is appellant's contention that the testimony in question was not in

fact material meritorious. Appellant contends that whether or not Pat Rone operated the motorboat which brought Harrell and the deputy from the adjoining county to the houseboat where Blackwell was arrested can have no possible bearing on whether or not Sheriff Hill and his codefendants were guilty of a liquor violation of their own. It is true that Harrell's testimony in no way relates directly to the guilt or innocence of Sheriff Hill and his codefendants. But Harrell was not placed on the stand by the defendants to testify regarding the basic issue then in suit. He was placed on the witness stand to discredit the testimony of the chief prosecution witness, Blackwell. He testified that Blackwell's reputation for veracity was bad, that he was not to be believed under oath, that, in fact, Blackwell was a liquor law violator himself in that he was operating an illicit still on the houseboat. Blackwell's testimony on cross-examination, previously given at the same trial, denied any connection whatever with the houseboat, or the still thereon. Consequently, Harrell's testimony definitely focused the attention of the jury on the credibility of Blackwell. It indicated that Blackwell's testimony denying ownership of the still was not to be believed and that his testimony directly connecting Sheriff Hill and his codefendants in a conspiracy to violate the liquor laws should also be discredited.

■ In appraising Blackwell's testimony respecting the still, the jury had a right to know that Pat Rone, one of the defendants in the liquor case, had told Sheriff Hill about the still and that, on Sheriff Hill's instructions, Rone actually brought Hill's chief deputy, Harrell, and the deputy sheriff from Monroe County to the houseboat to lie in wait for the owner of the still, presumably Blackwell, to come aboard. Harrell's perjury denied the jury that right. It was, therefore, material for " 'falsehood

in the statement of collateral matter, not of substance, * * * may or may not be criminal, according as they may tend to give weight and force to other and material circumstances, or to give additional credit to the testimony of the witness himself, or of some other witness in the case. And therefore every question upon the cross-examination of a witness is said to be material.' " Blackmon v. United States, 5 Cir., 108 F.2d 572, 574. See also, United States v. Weiler, 3 Cir., 143 F.2d 204; United States v. Slutzky, supra.

■ Moreover, the perjury of Harrell not only tended to affect the credibility of the witness Blackwell, it also suppressed an item of evidence which bore directly on the guilt or innocence of the defendants then on trial. Taken with Blackwell's denial of ownership of the illicit still, this item of evidence tends to establish that Blackwell's arrest was inspired by the defendant, Rone, acting in co-operation with Sheriff Hill, for the purpose of keeping Blackwell from testifying, or at least embarrassing his testimony, in their trial, then only a few days away. So taken, it would tend to establish a consciousness of guilt on the part of the defendants which, of course, is admissible evidence in any criminal case.

■ Appellant also complains that Blackwell's testimony in the former trial was read to the jury in his trial, over objection, after a stipulation between counsel that the transcription thereof was accurate. He argues, citing cases,[2] that he, as the defendant, had the right to be confronted by the witnesses against him and no foundation was laid by the prosecution which would eliminate the necessity for confrontation. In so arguing, appellant misconceives the purpose for which Blackwell's testimony taken at the former trial was admitted in evidence in appellant's trial for perjury. The truth or falsity of Black-

**2.** Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Christoffel v. United States, 91 U.S.App.D.C. 241, 200 F.2d 734; Meehan v. United States, 9 Cir., 70 F.2d 857.

well's testimony was not at issue in Harrell's trial. The fact of his testimony alone was at issue, that is, the fact that he did so testify, and that fact was stipulated when appellant admitted the accuracy of the transcript. It has been held many times that testimony taken during a trial in which perjury is alleged to have been committed is admissible on trial of the perjury charges to show that such testimony was in fact given. And this rule applies not only to the alleged perjury testimony itself, but to all the testimony in the former case which the court trying the perjury charges deems relevant to determine the issue of materiality of the alleged perjured testimony. 70 C.J.S., Perjury, § 57; 41 Am.Jur., Perjury, § 60.

▆▆▆▆ Appellant then makes the point that if the issue of materiality of the alleged perjury is for the court and not for the jury, as we have ruled, it was error for the trial court to allow Blackwell's testimony to be read to the jury. If the testimony taken at the former trial was relevant on the trial for perjury only for the purpose of determining the materiality of the alleged perjured testimony, appellant's point might be well taken. It would seem that if the question of materiality is for the court alone, then that question should be resolved on testimony submitted outside the presence of the jury. But the relevancy of the testimony taken at the trial at which perjury is alleged to have been committed is not limited to question of materiality alone. Luse v. United States, 9 Cir., 49 F.2d 241. In order to prove perjury, the prosecution must show that the testimony was willfully given, and willfulness is a question for the jury. Only by a full understanding of the issues on trial at the time the alleged perjury was committed can the jury determine the willfulness of the defendant in giving his testimony. One way to prove these issues, subject to the discretion of the trial court, is by the transcript of the testimony taken at that trial. It is true that in cases where the defendant in perjury was himself the defendant in the former trial, the admission of testimony taken at the former trial may introduce into the trial of the perjury charges highly prejudicial evidence tending to show the commission of other crimes. But such is not the case here. Harrell was not a defendant at the trial in which his perjury was committed. Moreover, the testimony of Blackwell given therein in no way connects Harrell with violations of the law or otherwise reflects prejudicially upon him. In fact, Blackwell's testimony does not even contradict Harrell on the perjury in suit, for at the time of Blackwell's arrest, Pat Rone had already left the houseboat and Blackwell was unaware that it was Rone who had transported Harrell and the deputy from Monroe County there.

Appellant's attack on the court's instruction to the jury is largely centered around an incident which occurred after the jury had returned for further instruction. In charging the jury, the trial judge read the perjury statute.[3] Later when the jury returned for additional instructions, the court did not at first reread the definition of perjury from the statute but charged the jury, "* * * In any case, if a person swears falsely, knowingly, under oath, it is perjury. * * *" Whereupon a juror asked the following question, "Would you please reiterate something? I believe you read the definition of the type of perjury, whether it was unlawful or willful, would you reiterate this?" Judge Thomas then again read the perjury statute and added, "Perjury is willfully, is knowingly, swearing falsely, under oath, to a material fact." Thereafter followed this colloquy:

"Juror: That is the question right there. The words knowingly

3. 18 U.S.C. § 1621:
"Whoever, having taken an oath before a competent tribunal, * * * willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true, is guilty of perjury * * *."

and wilfully are synonymous. The word 'knowingly' didn't appear in that section, but you used the word 'knowingly.'

"Judge Thomas: The word 'knowingly' is wrong. I am incorrect in stating to you the word 'knowingly.' It is not in the statute or in the indictment. The indictment charges unlawfully, willfully or corruptly. Unlawfully means without legal justification or without authority of law. Wilfully means intentionally and not by accident. Corruptly means dishonestly. I think the word 'willfully' means intentionally and not by accident. I think that implies or includes the sense of knowing. The indictment charges that he unlawfully, wilfully and corruptly, contrary to oath, testified falsely. Now, have I answered your question?

"Juror: I think so, Your Honor."

The jury retired and came down a short time later with its verdict.

Appellant contends that on retiring for the second time, the jury believed, as a result of the court's last instruction, that the defendant could be found guilty under the indictment in spite of the fact that he did not know he was testifying falsely. He argues that the fact that in other parts of the court's instructions the jury was correctly charged on the elements of perjury does not relieve the improper instruction given after the jury had returned for additional instruction and immediately before it resumed its deliberation. In this connection, appellant relies most heavily on Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350. In Bollenbach, the Supreme Court reversed a conviction where the court had given erroneous additional instructions to the jury after the case had been submitted for its deliberation. The fact that the jury convicted within a few minutes after the erroneous charge was given convinced the Supreme Court that,

in spite of the fact that in other parts of the charge the law was correctly stated, the erroneous instruction, being the last word given the jury, may have resulted in a miscarriage of justice.

The charge here, however, differs from the Bollenbach charge in that, although coming as additional instructions after the case was submitted to the jury for its deliberation, it was not improper. The trial court here in its charge in chief properly defined the crime of perjury and the elements thereof. He told the jury that perjury was the willful lying under oath. It is true that when answering a question from a juror, he stated that the word "knowingly" was not included in the statutory definition of perjury. But he went on further to say that false testimony, to constitute perjury, had to be willfully given and that willfully means intentionally and knowingly. Not only were the court's additional instructions correct in law, the record shows they were understood by the juror who had provoked the colloquy.

Appellant's final contentions relate to the failure of the trial court to give certain requested instructions. The trial court refused to give instructions to the effect that if from the evidence there was a probability of the defendant's innocence, such probability was just ground for reasonable doubt. In support of such instructions, appellant relies on several Alabama cases[4] which, apparently, do not state the law of Alabama today. Stokley v. State, 254 Ala. 534, 49 So.2d 284; Edwards v. State, 205 Ala. 160, 87 So. 179. It is unnecessary to analyze these cases, however, for the reason that the trial of criminal cases in federal courts is not governed by state law, and the Supreme Court of the United States has held in Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528, that the refusal of a charge which would instruct the jury that the probability of the defendant's innocence was a just ground for rea-

---

**4.** Smith v. State, 182 Ala. 38, 62 So. 184; Veasey v. State, 20 Ala.App. 478, 103 So. 67.

sonable doubt is not error where the usual charge on reasonable doubt is given, as it was here.

■ ▇▇ Appellant also complains of the trial court's refusal to charge the jury that the presumption of innocence is evidence for the defendant, citing Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481. It may well be that Coffin v. United States is subject to the interpretation which appellant urges. Nevertheless, it is now generally agreed that the later cases of Agnew v. United States, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624, and Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021, have corrected the impression created by Coffin that the presumption of innocence is evidence. In United States v. Nimerick, 2 Cir., 118 F.2d 464, 152 A.L.R. 620, Judge Augustus N. Hand correctly analyzed these cases, and it would serve no useful purpose to restate that which he has so well written. See, also, British American Assur. Co. of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256; Jefferson Standard Life Ins. Co. v. Clemmer, 4 Cir., 79 F.2d 724; United States v. Schneiderman, D.C., 102 F.Supp. 52.

■ ▇▇ Finally, appellant asks reversal of his conviction on the ground that the trial court refused to instruct the jury on the elements of perjury as well as on the necessity that an oath be duly administered to a witness before he can be prosecuted for false statements given under that oath. The trial court gave the defendant's requested charges Nos. 16 and 17[5] which include exactly the instructions, the omission of which the appellant now complains. A reading of these two requested charges suggests the possibility that appellant's contention in this regard is an inadvertence.

Affirmed.

5. Defendant's Charge No. 16 reads as follows:

"The Court charges the jury that the essential elements of the crime of perjury as defined in section 1621 of Title 18 of the Code of the United States are (1) an oath authorized by the law of the United States; (2) taken before a competent tribunal, officer or person; and (3) a false statement wilfully made as to facts material to the hearing; and unless you are convinced by the evidence beyond a reasonable doubt and to a moral certainty that all of said essential elements exist in this case you must find the defendant not guilty."

Defendant's Charge No. 17 reads as follows:

"The Court charges the jury that it is essential to proof of the charge of perjury in a criminal case that an oath must have been administered to the defendant by some officer authorized to administer an oath, and unless you are convinced by the evidence in this case beyond a reasonable doubt and to a moral certainty that an oath was administered to this defendant in criminal case number 12816 recently pending in this Court in which it is charged that this defendant testified and which alleged testimony is the basis of this case, you must find the defendant not guilty."