UNITED STATES of America, Appellee,

v.

Philip ALBERGO, Defendant-Appellant.

No. 1013, Docket 75–1279.

United States Court of Appeals,
Second Circuit.

Argued May 13, 1976.

Decided June 17, 1976.

---

George S. Meissner, Brooklyn, N. Y., for defendant-appellant.

Stanley A. Teitler, Asst. U. S. Atty., E. D. N.Y., Brooklyn, N. Y. (David G. Trager, U. S. Atty. for the E. D. N. Y., Brooklyn, N. Y., of counsel), for appellee.

Before SMITH, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

VAN GRAAFEILAND, Circuit Judge:

This is an appeal from a judgment following a jury verdict in the United States District Court for the Eastern District of New York convicting defendant of perjury before a grand jury. 18 U.S.C. § 1623(a). We affirm.

In the Spring of 1973, Michael Rigolizzo, an agent of the FBI, began an investigation into the theft of approximately seven thousand airline tickets. His efforts uncovered a possible connection between the stolen tickets and Larry Alfano, manager of the Cross Roads Bar in Queens, New York, and an associate of his, Mike Augendiso. As a result of Agent Rigolizzo's investigation, a special grand jury was impanelled; and appellant was one of approximately 500 witnesses called to testify.

At the outset of his testimony, appellant was informed as to the nature and scope of the investigation into stolen airline tickets. He was then questioned regarding his relationship with Larry Alfano and Mike Augendiso and admitted a personal and business relationship with Alfano and an acquaintanceship with Augendiso. He also testified in response to inquiry, that he knew a girl named Loraine and had talked with her on the telephone at the Cross Roads Bar.

When the questioning turned to the subject of airline tickets, appellant's affirmative answers ceased. He denied ever having taken an airline trip or having purchased or received airline tickets and said he didn't even know what they looked like. He stated that he had never talked to a "Larry" or "Mike" about airline tickets and that he knew nobody who had gotten tickets from Larry or Mike. Appellant's indictment was based on this latter testimony, which is set forth in full in the margin.[1]

At the trial which commenced before Judge Judd on June 9, 1975, appellant's grand jury testimony was introduced into evidence, following which the prosecution called Agent Rigolizzo to the stand. Rigolizzo testified, over vigorous defense objection, that he had been engaged for some time in the investigation of stolen airline tickets; that he had recovered approximately two thousand of the seven thousand tickets reported stolen; that some of the stolen tickets had been traced to the Cross Roads Bar, and that he had been able to connect certain of these tickets to Larry Alfano and Mike Augendiso.

Following this testimony, the Government introduced into evidence four telephone conversations recorded from wiretaps placed on telephones at the Cross Roads Bar. They were all between a male speaking from a telephone in the Bar and a female subsequently identified as Loraine Zencorich. In the first recording, there are vague references to a trip to Miami and to July 28 as a departure date for someone named Marsha. There is also an apparently facetious suggestion by Loraine that the male with whom she was talking get her a ticket to Australia.

In the second conversation, the male asks if a figure of $340 is correct and receives an affirmative response. He then states, " . . . we get'em like, say like half price," so "that would be one hundred and seventy dollars . . . for two."[2] The male then refers to a cut on the deal by someone named "Mikie" and states that he's delivering "them" tonight.

In the third conversation, the male advises Loraine that he has her tickets and that their actual cost is $171 each.

In the final conversation, Loraine calls the Bar and asks for "Philip". Within seconds, the male voice which appeared on the three previous tapes is heard. For the first time, there is mention of "Larry" when the male tells Loraine that Larry says they had been charged too much for the tickets.

After the introduction of these tapes, Officer Paulsen of the New York City Police Department was called as a witness and identified appellant as the male speaker.[3] As a foundation for this identification, Paulsen testified that he had heard appellant's voice on tape some 500 different times and that he had on one occasion visited the Cross Roads Bar and listened to appellant talking with a group of men at the Bar.

Asserted error in connection with the testimony of Agent Rigolizzo and Officer

1. Q. Do you know anybody else, anybody at all who's gotten airline tickets from Larry or from Mike?

A. No, Sir. I know nothing about airline tickets.

Q. You know nothing?

A. No.

Q. No question in your mind?

A. No nothing.

2. The Government established that the round trip air fare between New York and Miami for two persons was $342.

3. The taps on the Cross Roads Bar telephones were placed by the New York Police Department as part of a separate investigation.

Paulsen forms the basis of appellant's appeal. Appellant contends that Rigolizzo's testimony was irrelevant and prejudicial; that the testimony of Paulsen was insufficient to support his voice identification, and that the manner in which such identification was made was unduly suggestive and therefore violative of due process.

### Agent Rigolizzo's Testimony

While conceding the need for the Government to establish that his allegedly false statements were material to the investigation being conducted by the grand jury, *see United States v. Moran*, 194 F.2d 623 (2d Cir.), *cert. denied*, 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362 (1952), appellant contends that such materiality could have been proven with evidence less prejudicial than the testimony of Rigolizzo. He suggests, for example, that the grand jury foreman could have been called as a witness. *See e. g., United States v. Alu*, 246 F.2d 29 (2d Cir. 1957). He also suggests that Rigolizzo's testimony was offered primarily for the improper purpose of raising an inference that Larry Alfano had stolen tickets and that appellant knew this to be so.

Judge Judd very carefully instructed the jury, however, that no such inferences could be drawn. He said:

> The fact that there might have been some stolen airline tickets, that was the subject of the investigation and that's been referred to. That is not grounds for convicting this defendant on a perjury charge. He [the appellant] is not charged with possession of stolen tickets or with aiding in the possession of stolen tickets. The testimony by Mr. Rigolizzo with respect to the fact that he had traced some of the stolen tickets to the Cross Roads Bar, has a bearing on the materiality of the question and on the importance of the finding out as much as could be learned about dealings in the Cross Roads Bar. But it does not permit you to infer that Mr. Alfano had stolen tickets, nor that

Mr. Albergo knew Mr. Alfano had stolen tickets.[4]

The balancing of relevance against prejudice is primarily for the trial judge; and, without a showing of abuse, his exercise of discretion will not be overturned. *United States v. Chapin*, 169 U.S. App.D.C. 303, 515 F.2d 1274, 1284 (1975), *cert. denied*, 423 U.S. 1015, 96 S.Ct. 449, 46 L.Ed.2d 387 (1975). Agent Rigolizzo's testimony was not only material to an understanding of what took place before the grand jury; it was also relevant to an understanding of the taped conversations introduced during the trial. If, as appellant contends, the trial jury would have been fully aware of the scope of the grand jury investigation without this testimony, it could hardly be considered prejudicial. Indeed, there was virtually nothing in the testimony that was not easily inferred from the grand jury minutes. When, as part of an investigation into stolen airline tickets a witness is asked whether he knows "who's gotten airline tickets from Larry or from Mike", one would have to be extremely naive not to assume that Larry and Mike were connected in some way with the theft. In view of the careful manner in which Judge Judd circumscribed the use of Rigolizzo's testimony, we see no prejudicial error in its admission.

### Officer Paulsen's Testimony

In his challenge to Officer Paulsen's testimony, appellant takes somewhat inconsistent positions. He argues, on the one hand, that identification of his voice required a "face to face" conversation with him, apparently finding no hint of undue suggestion in such individual confrontation. On the other hand, he contends that when Officer Paulsen identified his voice from among six men talking together at the Cross Roads Bar, this procedure was unduly suggestive. We find no merit in either argument.

A telephone conversation is admissible in evidence if the identity of the

---

4. Judge Judd also instructed the jury:

Mr. Alfano is not on trial for stealing airline tickets, nobody is on trial for possession of

airline tickets. The caution [sic—question] is simply whether Mr. Albergo gave full and truthful answers.

speaker is satisfactorily established. *United States v. Biondo*, 483 F.2d 635 (8th Cir. 1973), *cert. denied*, 415 U.S. 947, 94 S.Ct. 1468, 39 L.Ed.2d 563 (1974), and the question is for the jury if, as reasonable men, they could find the claimed identification to be accurate. *United States v. Alper*, 449 F.2d 1223, 1229 (3d Cir. 1971), *cert. denied*, 405 U.S. 988, 92 S.Ct. 1248, 31 L.Ed.2d 453 (1972). Identification may be based upon a subsequent acquaintanceship with the speaker. *United States v. Borrone-Iglar*, 468 F.2d 419 (2d Cir. 1972) (per curiam), *cert. denied*, 410 U.S. 927, 93 S.Ct. 1360, 35 L.Ed.2d 588 (1973). Indeed, it may be adequate, although the persons involved have never personally met. *United States v. Chiarizio*, 525 F.2d 289 (2d Cir. 1975). Impossibility of error is not a prerequisite to the admissibility of evidence. *United States v. Wilkes*, 451 F.2d 938, 939 (2d Cir. 1971); *United States v. Easterday*, 57 F.2d 165, 167 (2d Cir.), *cert. denied*, 286 U.S. 564, 52 S.Ct. 646, 76 L.Ed. 1297 (1932). Where, as here, the identifying officer had listened to appellant's voice in over 500 taped conversations, his testimony was sufficient to permit the jury, as responsible men, to identify appellant as the "Philip" who participated in the four conversations at issue.

 In his argument based on suggestiveness, appellant attempts to analogize Paulsen's voice identification to the lineup identification of participants in crimes. This argument is misplaced. Appellant was being tried for perjurious grand jury testimony, not for illegal telephone conversations. Moreover, the requirements for voice authentication do not differ markedly from those for document authentication. Once a prima facie case of authorship is made out by the proponent of the evidence, the testimony is admissible; and the reliability of the identification is for the jury. *Carbo v. United States*, 314 F.2d 718, 743 (9th Cir. 1963), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1964). The "due process" procedure urged by appellant would, if generally applied, make a mockery of Rule 901 of the new Federal Rules of Evidence which requires only that the opinion of the witness be "based upon hearing

the voice at any time under circumstances connecting it with the alleged speaker". Without deciding whether there might be some conceivable circumstances in which appellant's due process contentions would have merit, we hold that they have none here.

 Appellant argues, almost in passing, that the questions posed to him by the grand jury were ambiguous. This argument may be as summarily disposed of. To a person predisposed to answer truthfully, the questions were clear. *See United States v. Bonacorsa*, 528 F.2d 1218 (2d Cir. 1976).

The judgment is affirmed.

MANSFIELD, Circuit Judge (dissenting):

Although I concur in most of my brother Van Graafeiland's thoughtful opinion, I must respectfully dissent from that part which deals with the district court's admission into evidence of FBI Agent Rigolizzo's hearsay testimony to the effect that in the course of his investigation he had learned of the theft of some 7,000 blank airline tickets, at least some of which had later passed through the Cross Roads Bar and were connected with Mike Augendiso and Larry Alfano, the latter being the manager of the bar. This testimony was not relevant to any issue properly before the jury and its admission before the jury in the circumstances of this case was highly prejudicial to the defendant. Its effect was to paint the defendant as an associate of known traffickers in stolen airline tickets, since he had made his telephone calls from the Cross Roads Bar and had admitted to the grand jury that he had met Mike Augendiso there and had accompanied Larry Alfano to Augendiso's house.

This testimony was purportedly offered only to show that the evidence sought to be elicited from the defendant was material to the grand jury's inquiry, but the contention that it was properly admitted on this basis simply cannot be sustained. The materiality of the subject concerning which a defendant is alleged to have perjured himself

is a question of law for the court, not a question for the jury. *Sinclair v. United States*, 279 U.S. 263, 298–99, 49 S.Ct. 268, 73 L.Ed. 692 (1929); *United States v. Marchisio*, 344 F.2d 653, 665 (2d Cir. 1965). Since there was no need for the jury to hear the prejudicial evidence, the proper course was for the judge to excuse the jury, receive the testimony out of the jury's presence, and make his ruling on materiality. See *United States v. Whitted*, 454 F.2d 642, 646–47 (8th Cir. 1972); *Harrell v. United States*, 220 F.2d 516, 520 (5th Cir. 1955) (dictum).[1] Indeed the test of materiality—whether a false answer might tend to influence, impede or dissuade the grand jury in its investigation—is fixed at such a low level that only a minimal amount of proof need be presented to the court to establish materiality; a showing from the grand jury minutes or a statement from the prosecutor that the grand jury was investigating the matter under inquiry would suffice in most cases.

Allowing the jury in this case to hear the testimony could not be deemed harmless error. Without Rigolizzo's testimony the jury might have had serious doubts about whether the defendant Albergo was referring to airline tickets, stolen or otherwise, in his taped phone conversations from the bar, since neither he nor the other party to these conversations (Loraine Zencorich) ever referred to airline tickets, much less to stolen ones. But on the basis of Rigolizzo's hearsay testimony to the effect that defendant's admitted friends, Larry and Mike, one of whom was the owner of the bar from which Albergo was telephoning, had been "connected with" the stolen tickets, some of which had been recovered from Larry, the trial jury would have an understandable tendency to assume that because the defendant's friends were said to be trafficking in stolen tickets, Albergo must have been conducting sales of those tickets in his telephone conversations, and had therefore lied to the grand jury when he testified

that he knew nothing about airline tickets "gotten . . . from Larry and Mike." In short the tendency of this testimony was to convict Albergo through guilt by association.

Even if we assume *arguendo* that Rigolizzo's testimony might properly be admissible for a limited purpose, it is doubtful that its probative value would outweigh this prejudice to the defendant, see Fed.R.Ev. 403, or that the latter could be cured by an instruction, buried amidst other charges, to the effect that the testimony did not permit the jury to infer participation by the defendant in the handling of stolen tickets. But where, as here, the testimony was wholly irrelevant to those issues properly before the jury, and thus entirely unnecessary, it was clearly erroneous to admit it at all. Under such circumstances, the error could hardly be remedied by such an instruction, which might be countenanced in other instances. "The naive assumption that prejudicial effects can be overcome by instructions to the jury, cf. *Blumenthal v. United States*, 332 U.S. 539, 559 [68 S.Ct. 248, 257, 92 L.Ed. 154], all practicing lawyers know to be unmitigated fiction. See *Skidmore v. Baltimore & Ohio R. Co.*, 2 Cir., 167 F.2d 54." *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Justice Jackson concurring).

I must also emphatically disagree with the majority's statement to the effect that one could assume from the prosecutor's questioning of the defendant regarding whether he knew "who's gotten airline tickets from Larry and Mike" that "Larry and Mike were connected in some way with the theft." This assumption violates basic evidentiary principles. On the contrary, trial judges routinely instruct juries every day that counsel's mere questions do not constitute evidence and that they cannot provide an evidentiary basis for any inference. Only answers are evidence. In this case the only evidence forming a basis for such an

---

1. *United States v. Moran*, 194 F.2d 623 (2d Cir.), *cert. denied*, 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362 (1952), on which the government relies in arguing that the jury might hear this evidence, does not support that position. *Mor-*

*an* rejected the argument that the court alone should have heard evidence bearing only on materiality solely on the ground that the point had not been properly raised below in the case. *Id.* at 626. Here a proper objection was made.

assumption is found in the improperly admitted hearsay answers furnished by Agent Rigolizzo.

For these reasons I would reverse and remand the case for a new trial.