Nathan BADER, Plaintiff,

v.

Malcolm K. FLESCHNER, William J. Becker and Harold B. Ehrlich, Defendants and Third-Party Plaintiffs,

v.

HARRY GOODKIN & CO., Third-Party Defendant.

Irving BADER, Plaintiff,

v.

Malcolm K. FLESCHNER, William J. Becker and Harold B. Ehrlich, Defendants and Third-Party Plaintiffs,

v.

HARRY GOODKIN & CO., Third-Party Defendant.

PRIME FUNDING CO., Custom Shop Corp., 198–204 Main Street Corp., Custom Shop 55th Street Corp., Custom Shop Dallas Corp. and Mortimer Levitt, Plaintiffs,

v.

FLESCHNER BECKER ASSOCIATES, Malcolm K. Fleschner, William J. Becker, Harold B. Ehrlich, Leon Pomerance and Arctos Corporation, Defendants.

Irving BADER, Plaintiff,

and

Lawrence A. Tisch and Preston R. Tisch, Intervenor Plaintiffs,

v.

William J. BECKER, Malcolm K. Fleschner, Harold B. Ehrlich, Leon Pomerance, Arctos Corporation, Fleschner Becker Associates and Harry Goodkin & Co., Defendants.

Nos. 74 Civ. 4129, 74 Civ. 4208, 75 Civ. 3178 and 75 Civ. 4765 (CHT).

United States District Court, S. D. New York.

Dec. 27, 1978.

---

Weinstein & Levinson, New York City, for plaintiffs; Frank Weinstein, Samuel Weinstein, Leonard I. Schreiber, New York City, of counsel.

Sullivan & Cromwell, New York City, for defendants Malcolm K. Fleschner, William J. Becker, Harold B. Ehrlich and Leon Pomerance; Richard E. Carlton, David M. Olasov, Robert D. Owen, New York City, of counsel.

## OPINION

TENNEY, District Judge.

The motions before this Court are brought with regard to portions of four actions—individual and derivative—which have been consolidated for purposes of trial. All derivative and individual claims allege, essentially, irregularities in the activities of the general partners of Fleschner Becker Associates, an investment partnership of which the plaintiffs were limited partners. Defendants' motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rules") is addressed to individual actions seeking rescission of the Agreement of Limited Partnership ("partnership agreement"). Plaintiffs' motion and defendants'

cross-motion for partial summary judgment, brought pursuant to Rule 56, are addressed to claims for damages arising out of breach of fiduciary responsibility asserted in the derivative action. Federal jurisdiction is based upon section 22 of the Securities Act of 1933, 15 U.S.C. § 77v, upon section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and upon section 214 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–14. For the reasons discussed below, all motions are denied.

### The Facts

Fleschner Becker Associates ("FBA") was formed by defendants Malcolm K. Fleschner and William J. Becker in April 1966 for the purpose of investing in stocks, bonds and other securities through private management of a common pool of assets.[1] On October 1, 1968, the partnership agreement was revised and entered into between Fleschner, Becker and defendant Harold J. Ehrlich[2] as general partners and 66 other persons and entities as limited partners. Among these were plaintiffs Irving Bader, his brother Nathan Bader, Laurence A. Tisch, Preston R. Tisch, Prime Funding Company, Mortimer Levitt, Custom Shop Corporation, 198–204 Main Street Corporation, Custom Shop 55th Street Corporation and Custom Shop Dallas Corporation.

A limited partner of FBA had no role in investment management, which was vested exclusively with the general partners. A limited partner could, however, withdraw all or part of his capital account at the close of any fiscal year (September 30) provided that he complied with certain notice requirements set out in the partnership agreement. He could also borrow up to 25% against his capital account at any time during the year subject to the discretion of a general partner—a loan which, if not repaid with interest by the end of the fiscal year, would be debited against his account.

1. FBA was originally organized as a family investment partnership on July 1, 1965 under the name of The Fleschner Company. At that time, the partnership consisted of one general partner, Malcolm K. Fleschner, and eight limited partners. The partnership agreement was amended on April 1, 1966, at which time the name of the partnership was changed to Fleschner Becker Associates, and William J. Becker became a general partner.

2. Harold B. Ehrlich withdrew from FBA as general partner around September 30, 1969.

The general partners of FBA not only were empowered with management of the partnership and broad discretionary investment authority; they also were charged with the mailing of monthly reports to the limited partners. These reports represented FBA's investment policy as conservative and of low risk. However, between September 1968 and September 1969, the firm's investment in restricted securities[3] ranged from 72% to 88% of its portfolio. The monthly reports of this period did not disclose this fact. The first notice to the limited partners of FBA's sizable investment in unregistered securities was made in the September 30, 1969 report, received in January 1970. In July 1972, FBA was placed in liquidation as a result of its financial problems, although distribution of FBA's assets has been delayed by litigation.[4]

The saga of Fleschner Becker Associates has been before the courts of the Southern District of New York since 1974, when Nathan Bader sued in his individual capacity for rescission of the partnership agreement and return of his investments thereunder with interest. *Nathan Bader v. Malcolm K. Fleschner, et al.*, No. 74 Civ. 4129 (S.D.N.Y. filed Sept. 23, 1974). Irving Bader commenced a similar action in this court two days later. *Irving Bader v. Malcolm K. Fleschner, et al.*, No. 74 Civ. 4208 (S.D.N.Y. filed Sept. 25, 1974). In June 1975, six other limited partners—Prime Funding Company, Mortimer Levitt, Custom Shop Corporation, 198–204 Main Street Corporation, Custom Shop 55th Street Corporation and Custom Shop Dallas Corporation—commenced a derivative action on behalf of FBA. *Prime Funding Co., et al. v. Fleschner Becker Associates, et al.*, No. 75 Civ. 3178 (S.D.N.Y. filed June 30, 1975). In

September 1975, Irving Bader commenced a derivative action on behalf of FBA. *Irving Bader v. William J. Becker, et al.*, No. 75 Civ. 4765 (S.D.N.Y. filed Sept. 29, 1975).[5] In July 1976, the four actions were consolidated for purposes of trial by stipulation of the parties. The Irving Bader derivative action and the derivative counts of the Prime Funding Company complaint were consolidated for all purposes; the second amended complaint in the Irving Bader action was substituted as the complaint in that consolidation.

### The Rule 12(b)(6) Motion

The first motion which this Court must consider is addressed to the complaints brought by plaintiffs Nathan and Irving Bader in their individual capacities. These complaints, which are virtually identical, allege violations of the Securities Act of 1933 (the "1933 Act"), particularly section 17, 15 U.S.C. § 77q; the Securities Exchange Act of 1934 (the "1934 Act"), particularly section 10(b), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, promulgated thereunder; and the Investment Advisers Act of 1940, particularly section 206, 15 U.S.C. § 80b–6. Plaintiffs allege that they sustained damages as a result of their participation as limited partners in FBA through, *inter alia*, defendants' nondisclosure of the insolvency of FBA in October 1968; defendants' failure to inform them of FBA's sizable investment in unregistered securities, and defendants' concealment of the fact that from October 1978 defendants, as well as friends and relatives who were limited partners, withdrew substantial portions of their capital investments from FBA.

---

**3.** The term "restricted security" is defined as securities acquired directly or indirectly from an issuer, or from a person in a control relationship with the issuer (an "affiliate") in a transaction or chain of transactions not involving any public offering. Such securities generally may not be transferred in a public sale absent registration with the Securities and Exchange Commission. *See* SEC Securities Act Release No. 5223 (Jan. 11, 1972).

**4.** For a more detailed discussion of the history and investment policies of FBA, *see Abrahamson v. Fleschner*, 568 F.2d 862 (2d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978).

**5.** In December 1975, Nathan Bader commenced a derivative action in the Supreme Court of the State of New York, County of New York. This action has been stayed pending determination of the federal actions.

Defendants moved under Rule 12(b)(6) to dismiss the individual complaints. They contend that since plaintiffs learned about FBA's investments in restricted securities by January 1970 and waited for over four and a half years from this discovery and for almost six years from their last capital investments in FBA (October 1, 1968) to assert claims under section 17 of the 1933 Act, section 10(b) of the 1934 Act, and Rule 10b–5, plaintiffs should be barred by a three-year federal statute of limitations to be judicially implied and imposed as a matter of first impression by this Court. Defendants next contend that the claims asserted under the Investment Advisers Act should be dismissed because: (1) the Advisers Act does not confer jurisdiction upon the federal courts to entertain actions at law; (2) there is no private right of action under section 206 of the Advisers Act; and (3) defendants were not "investment advisers" as that term is defined in section 202 of the Act.

We need not discuss at length defendants' Advisers Act argument. The Second Circuit recently held that there is an implied private right of action under section 206 of the Advisers Act and that jurisdiction over such actions at law is similarly implied. *Abrahamson v. Fleschner*, 568 F.2d 862, 876 (2d Cir. 1977), *cert. denied*, 436 U.S. 913, 98 S.Ct. 2253, 56 L.Ed.2d 414 (1978). The *Abrahamson* case, which involves the same partnership and identical defendants, binds this Court to reject defendants' Advisers Act contentions under principles of *stare decisis* and collateral estoppel.[6] Accordingly, defendants' motion to dismiss the claims brought under the Advisers Act is denied.

The next issue before the Court is whether plaintiffs' claims under the federal securities laws should be barred by a judicially implied three-year statute of limitations. Plaintiffs' claims rest on section 17 of the 1933 Act, section 10(b) of the 1934 Act, and Rule 10b–5—provisions of the federal securities laws for which there are no specific limitations periods. In actions alleging violations of these provisions, the courts of this circuit have traditionally looked to the applicable state statute of limitations for actions based on common-law fraud.[7] *See, e. g., Stull v. Bayard*, 561 F.2d 429, 431 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035 (1978); *Klein v. Shields & Co.*, 470 F.2d 1344, 1346 (2d Cir. 1972); *Klein v. Auchincloss, Parker & Redpath*, 436 F.2d 339, 341 (2d Cir. 1971); *Hoff Research & Development Laboratories, Inc. v. Philippine National Bank*, 426 F.2d 1023 (2d Cir. 1970); *Saylor v. Lindsley*, 391 F.2d 965 (2d

---

6. Like the plaintiffs in these actions, plaintiffs Robert and Marjorie Abrahamson were limited partners in FBA. In addition to proclaiming an implied private right of action under § 206 of the Advisers Act, the *Abrahamson* panel held that the general partners of FBA were "investment advisers" within the meaning of § 202(11) of the Act. 568 F.2d at 870. *See generally* Comment, *By-Passing the Purchaser-Seller Rule*, 44 Brooklyn L.Rev. 1241 (1978).

The substantive claims of the Abrahamsons, which have been remanded for trial, differ somewhat from those of the plaintiffs in the instant actions; no further collateral estoppel effects from *Abrahamson* may be appropriately considered at this time.

7. Defendants argue that should this Court decline to adopt a uniform federal limitations period, it should apply the limitations period purportedly governing what defendants find to be the state statutory provision most analogous to the federal securities law sections implicated in these actions; that is, §§ 339–a and 352–c of the New York General Business Law which provide penal liability for false statements and advertising as to the sale of securities. Defendants urge the Court to accept the analogy and further to adopt the position that the three-year statute of limitations contained in § 214(2) of the N.Y.C.P.L.R., ("The following actions must be commenced within three years: . . . 2. an action to recover upon a liability, penalty or forfeiture created or imposed by statute except as provided in sections 213 and 215."), governs actions brought under these New York statutes and, a fortiori, under federal securities law. However, defendants press this theory without the benefit of judicial support: the very court which first declared that a private civil cause of action could be maintained under § 352–c also declared that "since the private right of action under § 352–c is essentially a fraud action, the common law fraud damage rule is applicable." *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 130 (S.D.N.Y.1974). Thus, it follows that the governing statute of limitations should also be that for common law fraud—or six years.

Cir. 1968), *on remand,* 302 F.Supp. 1174 (S.D.N.Y.1969); *Fischman v. Raytheon Manufacturing Co.,* 188 F.2d 783 (2d Cir. 1951). In New York, claims of fraud must be brought within two years from the time plaintiff discovered, or could with the exercise of reasonable diligence have discovered, the fraud, or within six years of the fraud itself—whichever is later. N.Y.C.P.L.R. §§ 203(f), 213(8); *Stull v. Bayard, supra,* 561 F.2d at 432; *Klein v. Shields & Co., supra,* 470 F.2d at 1346. By this standard, the claims asserted by plaintiffs Nathan and Irving Bader arose within the six-year provision and are timely.

■ In urging that the individual complaints of the Baders should be time-barred, defendants point out some of the difficulties inherent in the standard discussed above—namely, choice of law between states with different limitations periods (especially for purposes of a borrowing statute) and inconsistent application of varying state limitations periods [8]—and invite this Court to accept an argument that has consistently been rejected by the courts of this circuit: that the maximum three-year limitations imposed by section 13 of the 1933 Act, 15 U.S.C. § 77m, and by sections 9(e)(3), 18(c) and 29(b) of the 1934 Act, 15 U.S.C. §§ 78i(e), 78r, 78cc, should apply

equally to private rights of action recognized by judicial implication under those Acts.[9]

Admittedly, the adoption of an implied federal statute of limitations which conforms to those expressly set forth in the federal securities laws might discourage forum-shopping and promote uniformity and predictability nationwide. However, in *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n.29, 96 S.Ct. 1375, 1389, 47 L.Ed.2d 668 (1976), the Supreme Court noted without criticism the disparity inherent in the application of the state standards:

> Since no statute of limitations is provided for civil actions under § 10(b), the law of limitations of the forum State is followed as in other judicially implied remedies. *See Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946), and cases cited therein. Although it is not always certain which state statutes of limitations should be followed, such statutes of limitation usually are longer than the period provided under § 13.

Where both Congress and the Supreme Court have declined to act, this Court feels constrained not to take the initiative at the district court level.[10] Accordingly, the mo-

---

**8.** Other circuits have adopted limitations periods contained in state Blue Sky laws in a number of § 10b–5 cases. *See, e. g., La Rosa Building Corp. v. Equitable Life Assurance Society,* 542 F.2d 990 (7th Cir. 1976); *Newman v. Prior,* 518 F.2d 97 (4th Cir. 1975); *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123 (7th Cir. 1972); *Mooney v. Tallant,* 397 F.Supp. 680, 683–84 (N.D.Ga.1975); *Hitchcock v. deBruyne,* 377 F.Supp. 1403, 1407 (D.Conn.1974).

**9.** Section 13 of the 1933 Act, 15 U.S.C. § 77m, provides:

> No action shall be maintained to enforce any liability created under section 11 [15 U.S.C. § 77k] or section 12(2) [15 U.S.C. § 77*l* (2)] unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence, or, if the action is to enforce a liability created under section 12(1) [15 U.S.C. § 77*l* (1)], unless brought within one year after the violation upon which it is based. In no event shall any such action be brought to enforce a liability created under section 11 [15 U.S.C.

§ 77k] or section 12(1) [15 U.S.C. § 77*l* (1)] more than three years after the security was bona fide offered to the public, or under section 12(2) [15 U.S.C. § 77*l* (2)] more than three years after the sale.

The provisions of the 1934 Act cited contain similar maximum three-year limitations periods.

**10.** In *Mittendorf v. J. R. Williston & Beane Inc.,* 372 F.Supp. 821, 830 n.4 (S.D.N.Y.1974), Judge Pollack noted that "[c]ommon sense and logic dictate that application of the period of limitation contained in the 1933 and 1934 Acts to 10b–5 claims would be preferable as a matter of Federal Securities Laws policy," but was deterred from applying a uniform period of limitation by Judge Learned Hand's often quoted admonition that it is not "desirable for a lower court to embrace the exhilarating opportunity of anticipating a doctrine which may be in the womb of time, but whose birth is distant," (*citing Spector Motor Service, Inc. v. Walsh,* 139 F.2d 809 (2d Cir. 1944) (dissenting opinion)).

tion to dismiss on the grounds that the claims are barred by the statute of limitations is denied.

### The Motions for Partial Summary Judgment

■ The Court also has before it two Rule 56 motions brought in the third of the consolidated actions. Plaintiffs,[11] suing derivatively on behalf of FBA, have moved for partial summary judgment against defendants Malcolm K. Fleschner, William J. Becker and Leo Pomerance (a general partner in FBA from June 1, 1969 until October 1, 1970) alleging violations of sections 4.03 and 9.05 of the partnership agreement.

Section 4.03 provides that each partner shall have the right to withdraw any amount from his capital account upon 30 days notice at the end of any fiscal year (September 30), and that distribution of the amount requested will be made within 90 days after the end of the fiscal year. Section 9.05 provides that "[e]ach notice relating to this Agreement shall be in writing and delivered in person or by registered or certified mail." Affidavit of Frank Weinstein, sworn to January 17, 1978, Exh. 2 ("Weinstein Affidavit"). Plaintiffs charge that defendants approved telephone requests for withdrawals of funds and paid the amounts requested within a few days, thus violating the partnership agreement in two ways: (1) the payments were not preceded by 30 days notice, and (2) the requests were not made in writing. By such violations, contend plaintiffs, the general partners breached their fiduciary duty to the limited partners. This motion is supported not only by the Weinstein Affidavit, but also by the affidavit of a certified public accountant and fifty-three memos of approved telephone requests for "cash withdrawals."

Defendants controvert plaintiffs' statement made pursuant to Rule 9(g) of the General Rules of the Southern District of New York and cross-move for partial summary judgment in their favor. They contend that the "cash withdrawals" at issue were not year-end withdrawals, but rather mid-year loans pursuant to section 4.01 of the partnership agreement. Section 4.01 provides that such loans may be made at any time on the approval of a general partner, without the written notice specified for section 4.03 withdrawals. Defendants' 9(g) Statement. Defendants assert that, as mid-year loans, the withdrawals were properly approved and distributed. Defendants' cross-motion is supported by the Affidavit of William J. Becker, sworn to March 21, 1978, and that of a certified public accountant, as well as by bookkeeping entries and letters advising of, and acknowledging receipt of, the repayment of loans to two limited partners—plaintiffs Mortimer Levitt and Custom Shop Corporation. Thus, this Court is asked to grant summary judgment on motions which present incompatible explanations of the same operative facts, with both explanations buttressed by documentary evidence and affidavits of certified public accountants.

■ It is a fundamental tenet that on a motion for summary judgment, the role of the district judge is limited to determining whether there are issues to be tried; he cannot try the issues himself by affidavit. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975); *Heyman v. Commerce & Industry Insurance Co.*, 524 F.2d 1317, 1319–20 (2d Cir. 1975); *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967). Moreover, in considering a motion for summary judgment, the court must resolve all ambiguities—and draw all reasonable inferences—in favor of the party against whom summary judgment is sought, with the burden on the moving party to demonstrate the absence of any material fact issue genuinely in dispute. *Heyman v. Commerce & Industry Insurance Co., supra*, 524 F.2d at 1320;

---

**11.** Plaintiffs in the consolidated derivative action are Irving Bader, Laurence A. Tisch and Preston R. Tisch (intervenor plaintiffs in the Irving Bader derivative action), Prime Funding Company, Mortimer Levitt, Custom Shop Corporation, 198–204 Main Street Corporation, Custom Shop 55th Street Corporation and Custom Shop Dallas Corporation.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).[12]

Application of these principles to the facts of the instant motions, wherein the parties advance totally incompatible explanations for the approved withdrawal of substantial funds from the FBA capital accounts and refute the conflicting explanation only to the extent that they demonstrate their own, indicates clearly that there are genuine issues of material fact that must be resolved at trial and that the matters are not ripe for summary disposition. Accordingly, both motions are denied.

So ordered.

---

**12.** Summary judgment is not made more readily available where both parties seek it, each in their own behalf.

The well-settled rule is that cross-motions for summary judgment do not warrant the court in granting summary judgment unless one of the moving parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed.

6 Moore's Federal Practice ¶ 56.13, at 56–341.