UNITED STATES of America

v.

Leonard AIKEN, a/k/a "Leon," and Benjamin Starckey, a/k/a "Skippy," Defendants.

No. 80 CR 70 (RWS).

United States District Court, S. D. New York.

May 16, 1980.

William M. Tendy, Acting U. S. Atty., S.D.N.Y., New York City, by Scott W. Muller, Raymond A. Levites, Asst. U. S. Attys., New York City, for plaintiff.

Jay Goldberg, P. C., New York City, for Leon Aiken.

Nathan H. Mitchell, New York City, for Benjamin Starckey.

## OPINION

SWEET, District Judge.

The defendants have moved this court to hold a pre-trial hearing on the issue of the suggestiveness of the technique used by the Government to identify the voices in certain taped conversations. A Government informant, David Reeves, recorded the conversations, but, due to his murder, is unavailable to identify one of the voices on the tapes as that of Aiken. According to the Government's representation, the tapes will be identified in court by two New York City Police Detectives. The detectives spoke with Aiken at the time of his arrest approximately ten months after the tape was recorded. Shortly thereafter, they identified the voice on the tape as that of Aiken.

The defendants claim that they are entitled to a hearing to determine whether the method used by the Government to identify the voices was unduly suggestive in violation of their Due Process rights. *See United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), *cert. denied*, 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977). The Government urges that the validity of the voice identification of Aiken must be assessed under the standard set forth in Fed.R.Evid. 901(b)(5), which permits "[i]dentification of a voice, whether heard firsthand or through technical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker," and not under the more stringent standards for lineup identification of participants in crimes. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); *United*

*States v. Leonardi,* 623 F.2d 746, (2d Cir. Apr. 17, 1980).

In *United States v. Albergo,* 539 F.2d 860 (2d Cir.), *cert. denied,* 429 U.S. 1000, 97 S.Ct. 529, 50 L.Ed.2d 611 (1976), Albergo was prosecuted for perjury due to differences between his testimony before the grand jury and statements made in four taped telephone conversations. A police officer, who testified that he had heard Albergo's voice over five hundred times and had once heard Albergo in person, identified the voice on the tapes as Albergo's. The court described Albergo's "attempts to analogize Paulsen's voice identification to the lineup identification of participants in crimes" as "misplaced."

> Once a prima facie case of authorship is made out by the proponent of the evidence, the testimony is admissible; and the reliability of the identification is for the jury. . . . The "due process" procedure urged by appellant would, if generally applied, make a mockery of Rule 901 . . . . .

*Id.* at 864 (citation omitted). The court left open the possibility that due process considerations might apply in other circumstances.

In *United States v. Puco,* 453 F.2d 539, 544 n.14 (2d Cir. 1971), *cert. denied,* 414 U.S. 844, 94 S.Ct. 106, 38 L.Ed.2d 82 (1973), the Court of Appeals denied Puco's attempt to apply suggestiveness standards to

> the testimony of Agent Scrocca that he recognized Puco's voice on the night of the arrest as that of the supplier, "Al," to whom Scrocca had spoken over the telephone on two different occasions . .

as "without merit."

The court in *United States v. Esposito,* 423 F.Supp. 908, 912–913 (S.D.N.Y.1976), similarly held that the defendants were not entitled to a pre-trial hearing on the issue of the fairness of the method used to identify the voices in taped conversations. The court stated that voice identification on a tape-recording is different from a lineup situation, which is peculiarly fraught with dangers of misidentification. *See also*

*United States v. Armedo-Sarmiento,* 545 F.2d 785, 792 (2d Cir. 1976), *cert. denied,* 430 U.S. 917, 97 S.Ct. 1330, 51 L.Ed.2d 595 (1977).

In contrast to *Albergo* and *Esposito,* the court in *United States v. Moore,* 571 F.2d 76 (2d Cir. 1978), applied suggestiveness standards to a voice identification, though it found them without merit. That case involved a kidnapping. Ira Huggins, the recipient of a ransom call, later identified the caller's voice as that of the defendant Burnell, first outside the courtroom based on a recording of Burnell's voice, and later in court based on a different recording. The court stated,

> We find nothing unduly suggestive in these identifications and conclude that the likelihood of irreparable misidentification was slight, if not nonexistent.

*Id.* at 91. However, in *Moore,* unlike *Albergo* and *Esposito,* Burnell's ransom call voice was not recorded, so that Huggins' identification of Burnell as the caller was based on comparison of his recollection of a brief phone call and a recording that was played to him later.

It is appropriate to draw a distinction between the circumstances confronted in *Moore,* in which the voice of the defendant sought to be identified is unrecorded, and situations such as those presented in *Albergo* and the present case in which the voice is memorialized on tape. In the former situation, the witness is asked to draw a comparison between a voice which he confronted at some moment in the past and a voice sample presented to him at the time of identification. The danger of suggestiveness is great because the witness may have gained only a fleeting exposure to the defendant's voice, the witness' auditory perception may have been distorted due to the circumstances under which the voice was heard, and the passage of time may have blurred the witness' recollection. The danger of misidentification in such a situation is analogous to the typical lineup context, *see Manson v. Brathwaite, supra* 432 U.S. at 112, 97 S.Ct. at 2251; *Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 34

L.Ed.2d 401 (1972), but differs from the situation in which the defendant's voice is captured on tape and preserved. In the latter case, the likelihood of misidentification is reduced, since the identification involves a comparison of the defendant's voice as originally recorded with other samples. This comparison need not be made by the person hearing the original conversation, but could be made by a voice expert, some other person familiar with the voice, as in *Albergo*, or indeed, as shown by *United States v. Williams*, 583 F.2d 1194 (2d Cir. 1978), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1025, 59 L.Ed.2d 77 (1979), by voice spectrogram analysis. Under Rule 901, so long as a witness identifies the voice "by opinion based upon hearing the voice . . . under circumstances connecting it with the . . . speaker," the accuracy of the identification is for the jury to determine.

*United States v. Pheaster, supra*, is the case principally relied upon by Aiken. There, a ransom call by a kidnapper was taped. A police officer who had known the defendant for fifteen years, identified the voice on the tape as the defendant's both at an out-of-court conference and in court. The court held that the suggestiveness standards of *Neil v. Biggers, supra*, and *Manson v. Brathwaite, supra*, were applicable and found the pre-trial identification procedure suggestive, but held that under all the circumstances the in-court identification was reliable. *Id.* at 369–372. The court did not explain its decision to apply suggestiveness standards, but simply stated,

> Because the possibility of "irreparable misidentification" is as great when the identification is from a tape-recording as when it is from a photograph or a line-up, we hold that the same due process protection should apply to either method.

*Id.* at 369. *Pheaster* has been followed in subsequent Ninth Circuit cases. *See United States v. Basey*, 613 F.2d 198, 202 and n.2 (9th Cir. 1979); *United States v. Kim*, 577 F.2d 473, 481–482 (9th Cir. 1978). However, in none of these cases was such an identification actually suppressed.

The Court of Appeals for the Second Circuit, whose rulings this court is bound to follow, *see Bader v. Fleschner*, 463 F.Supp. 976, 980 (S.D.N.Y.1978), has not adopted the rule set forth in *Pheaster*. *United States v. Albergo, supra*, 539 F.2d at 864. Moreover, for the reasons stated above, even in the absence of controlling authority, the court would be reluctant to adopt the *Pheaster* rule insofar as it applies to tape-recorded conversations.

In this case, the Government has the power to compel Aiken's presence at trial, *United States v. Cannatella*, 597 F.2d 27 (2d Cir. 1979), and to require Aiken to provide voice exemplars for the jury's evaluation, *see United States v. Dionisio*, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); *United States v. Mitchell*, 556 F.2d 371, 382 (6th Cir.), *cert. denied*, 434 U.S. 925, 98 S.Ct. 406, 54 L.Ed.2d 284 (1977); *United States v. Fears*, 450 F.Supp. 249, 251–252 (E.D.Tenn. 1978). In view of these circumstances, the technique used to identify Aiken's voice was not unduly suggestive.

The motion for a pre-trial hearing on this issue is denied.

IT IS SO ORDERED: