**UNITED STATES of America**

v.

**Norman HARRIS.**

Crim. No. H 80–30.

United States District Court,
D. Connecticut.

April 29, 1981.
As Amended May 5, 1981.

Richard Blumenthal, U. S. Atty., Richard N. Palmer, Peter R. Casey, III, Asst. U. S. Attys., Hartford, Conn., for plaintiff.

Ira B. Grudberg, New Haven, Conn., for defendant.

## RULING ON DEFENDANT'S MOTION IN LIMINE

JOSÉ A. CABRANES, District Judge:

Defendant Norman Harris has been charged, *inter alia*, with having made false statements to a federally insured bank, in violation of 18 U.S.C. § 1014, and with having conspired to make such false statements, in violation of 18 U.S.C. § 371. A trial on these charges is now scheduled to begin on May 26, 1981.

Mr. Harris has previously appeared before this court as a defendant in another criminal action. In that case, which was commenced on July 29, 1980, Mr. Harris was charged with two counts of having knowingly and willfully caused the odometer of a motor vehicle to be disconnected, reset, or altered, in violation of 15 U.S.C. §§ 1984 and 1990c. Mr. Harris was also charged with one count of having conspired to violate 15 U.S.C. §§ 1984 and 1990c, that conspiracy being in violation of 15 U.S.C. § 1986.[1] On December 22, 1980, the court accepted Mr. Harris' plea of guilty to one of the two substantive counts in that information and entered a finding of guilty. On January 22, 1981, the court sentenced the defendant to one year in prison, the execution of such sentence to be suspended immediately; to probation for a period of three years; and to a fine of $10,000. Mr. Harris has now moved the court to decide, in advance of trial, whether the fact that he pleaded guilty and was sentenced in connection with the "odometer tampering" charge will be admissible as impeachment evidence were he to testify at the trial of the pending "bank fraud" charges.

Rule 609, F.R.Evid., governs the use, for purposes of impeachment, of evidence of prior criminal adjudications. In particular, Rule 609(a) provides, in full, that

[f]or the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted if elicited from him or established by public record during cross-examination but only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the defendant, or (2) involved dishonesty or false statement, regardless of the punishment.

Where a defendant has pleaded guilty to a criminal charge, a conviction for that offense will enter when a sentence is imposed. *United States v. Vanderbosch*, 610 F.2d 95, 97 (2d Cir. 1979); *United States v. Semensohn*, 421 F.2d 1206, 1207–08 (2d Cir. 1970). Where an appeal of a conviction is pending, Rule 609(e), F.R. Evid., specifically provides that evidence of

1. Title 15, United States Code, section 1984 provides, in full, as follows:

    No person shall disconnect, reset, or alter or cause to be disconnected, reset, or altered, the odometer of any motor vehicle with intent to change the number of miles indicated thereon.

    Title 15, United States Code, section 1986 then provides, in full, as follows:

    No person shall conspire with any other person to violate section 1983, 1984, 1985, 1987, or 1988 of this title.

    Title 15, United States Code, section 1990c imposes criminal penalties for the knowing and willful violation of either section 1984 or section 1986. In particular, section 1990c(a) provides, in full, as follows:

    Any person who knowingly and willfully commits any act or causes to be done any act that violates any provision of this subchapter or knowingly and willfully omits to do any act or causes to be omitted any act that is required by any such provision shall be fined not more than $50,000 or imprisoned not more than one year, or both.

Thus when a defendant commits the substantive offense of odometer tampering, which is described in 15 U.S.C. § 1984, he is subject only to civil liability, pursuant to 15 U.S.C. § 1990b. For the defendant to be subject to criminal sanctions, he must be found to have committed the substantive violation of section 1984 both "knowingly" and "willfully," as those terms are used in 15 U.S.C. § 1990c. In the case at issue here, defendant Harris pleaded guilty to having knowingly and willfully caused an odometer to be disconnected, in violation of both 15 U.S.C. § 1984 and 15 U.S.C. § 1990c. *See* note 4, *infra*.

both the conviction and the pendency of the appeal will be admissible. Defendant Harris has already pleaded guilty to, and been sentenced for, a violation of 15 U.S.C. §§ 1984 and 1990c. Although an appeal of that conviction is now pending, *see United States of America v. Norman Harris*, Docket No. 81–1032 (2d Cir., filed Feb. 5, 1981), there can be no question that, for the purposes of Rule 609, defendant Harris stands convicted of the prior offense.

■ A violation of 15 U.S.C. §§ 1984 and 1990c is punishable by a maximum sentence of one year in prison. A conviction for that offense is, therefore, not admissible under Rule 609(a)(1). The question, then, is whether that offense is a crime which "involved dishonesty or false statement," which would, in turn, make evidence of a conviction for that offense admissible for purposes of impeachment under Rule 609(a)(2).

Neither the government nor counsel for the defendant have cited any case in which a prior conviction under 15 U.S.C. §§ 1984 and 1990c was offered pursuant to Rule 609(a)(2). The court has found guidance, however, in the legislative histories of Rule 609(a)(2) and 15 U.S.C. § 1984, as well as in cases involving other types of criminal convictions which have been decided by our Court of Appeals.

In discussing the scope of Rule 609(a), the Conference Committee Report on the draft Federal Rules of Evidence described crimes involving dishonesty or false statement as

> crimes such as perjury or subornation of perjury, false statement, criminal fraud, embezzlement, or false pretense, or any other offense in the nature of crimen falsi, the commission of which involves some element of deceit, untruthfulness, or falsification bearing on the accused's propensity to testify truthfully.

Conf.Rep.No.93–1597, 93d Cong., 2d Sess. 9, *reprinted in* [1974] U.S.Code Cong. & Ad. News 7098, 7103.

Drawing in part on these principles, *see United States v. Hayes*, 553 F.2d 824, 827 (2d Cir.), *cert. denied*, 434 U.S. 867, 98 S.Ct. 204, 54 L.Ed. 143 (1977), our Court of Appeals has held that evidence of a conviction for the possession and interstate transportation of untaxed cigarettes is admissible under Rule 609(a)(2), *United States v. Apuzzo*, 555 F.2d 306, 307–08 (2d Cir. 1977) (per curiam), *cert. denied*, 435 U.S. 916, 98 S.Ct. 1470, 55 L.Ed.2d 507 (1978), and has indicated that a conviction for the importation of cocaine—not otherwise treated as a crime of "dishonesty or false statement"— would be admissible if the offense had involved, for example, false written or oral statements to customs officials, *United States v. Hayes, supra*, 553 F.2d at 827–28 (dictum). A District Court within the Second Circuit has held that a conviction for willfully failing to file income tax returns is likewise admissible pursuant to Rule 609(a)(2). *United States v. Klein*, 438 F.Supp. 485 (S.D.N.Y.1977).

In contrast, our Court of Appeals has indicated that crimes of force, such as armed robbery or assault, or crimes of stealth, such as burglary or petit larceny, do not fall within the scope of Rule 609(a)(2). *United States v. Hayes, supra*, 553 F.2d at 827 (dictum). Thus a District Court has held that conviction for either conspiracy to distribute heroin or conspiracy to import marijuana is not admissible under Rule 609(a)(2). *United States v. Aiken*, 491 F.Supp. 37 (S.D.N.Y.1980).

■ Applying these principles to the offense at issue here, the court concludes that a violation of 15 U.S.C. §§ 1984 and 1990c is a crime involving dishonesty or false statement, for the purposes of Rule 609(a)(2), and thus is admissible for use as impeachment evidence.

In legislating against the practice of tampering with the odometers of motor vehicles, the Senate found such conduct to be both widespread and clearly fraudulent.

> Because consumers rely upon odometer readings as an index of the condition and value of motor vehicles, [15 U.S.C. §§ 1981–1991] mandat[e] a national policy against the disconnecting of, or the setting back of, odometers in order to defraud purchasers of motor vehicles.

Presently some seventeen States have enacted legislation to curb this practice. However, States without such legislation have found this practice on the increase, especially when a neighboring State has an odometer law. Odometers are turned back in States without odometer laws and then cars are marketed at inflated values in States with such laws. Thus, State odometer laws are easily circumvented and people in a State with such a law suffer because of this practice. By prohibiting the disconnecting or turning back of odometers, [15 U.S.C. §§ 1981–1991] would establish a national policy against odometer tampering and prevent consumers from being victimized by such abuses.

S.Rep.No.92–413, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Ad. News 3960, 3962.[2]

Congress then codified these findings in 15 U.S.C. § 1981, which states, *inter alia,* that purchasers, when buying motor vehicles, rely heavily on the odometer reading as an index of the condition and value of such vehicle; that purchasers are entitled to rely on the odometer reading as an accurate reflection of the mileage actually traveled by the vehicle; that an accurate indication of the mileage traveled by a motor vehicle assists the purchaser in determining its safety and reliability[.]

The precise reasons for tampering with an odometer may vary. The target of the act may be the prospective purchaser, with the tampering intended to misrepresent the condition, and thus the value, of the vehicle. This is, of course, the specific problem which apparently concerned Congress in enacting 15 U.S.C. §§ 1984 and 1990c. Alternatively, the target of such tampering may be the manufacturer of the vehicle, the purpose being to understate the number of miles traveled by the vehicle, and thus to prolong the warranty period. At the sentencing of defendant Harris on the odometer tampering charges, his counsel stated that this was the reason for the offense to which Mr. Harris had pleaded guilty.[3] In any case, the effect of such tampering is necessarily to misrepresent the number of miles actually traveled by the vehicle, and thus to deceive a party possessing a substantial economic interest in knowing the true condition and value of that vehicle. There can be no doubt that Harris pleaded guilty to knowingly and willfully violating 15 U.S.C. § 1984.[4] Indeed, in his statement

2. In considering a statutory ban on tampering with motor vehicle odometers, the House of Representatives was similarly convinced of the fraudulent nature of such conduct.

Because consumers commonly rely on the odometer reading as a measure of the vehicle's condition and fair value, it has become a widespread practice for unscrupulous dealers to disconnect or reset odometers in order to deceive prospective purchasers. This practice not only results in a considerable dollar loss, but also interferes with the consumer's ability to evaluate the condition of a vehicle's safety systems based upon their apparent use. As a consequence, the consumer may not properly examine a vehicle for degradation of key safety components such as the vehicle's suspension, steering, and brakes. H.R.Rep.No.92–1033, 92d Cong., 2d Sess. at 19 (1972).

3. At the sentencing proceeding held in connection with defendant Harris' conviction for violating 15 U.S.C. §§ 1984 and 1990c, counsel for the defendant stated:

... the vehicles were taken, demonstrators were taken to potential purchasers, potential customers. They test drove them; test rode them. The fact that the odometer had been disconnected was immediately apparent.

The only effect it would have in the case of new vehicles would be to, in effect, do the customer a favor and extend the life of the warranty. And to that extent, possibly the manufacturer might lose out something at the other end. And I say "possibly" because in many ways this was almost a service to the customer which the customer knew about, and more often than not it didn't matter.

Maybe, perhaps, in a very tiny percentage of cases something happened at 11,700 miles and fit in that category. It's perhaps a selling kind of thing—well, it is a selling kind of thing, which clearly is dishonest to a certain extent to the manufacturer when that's done.

*United States v. Norman Harris,* Criminal No. H 80–29, Transcript of Disposition [Sentencing] Proceeding at 7 (D.Conn. Jan. 22, 1981).

4. *United States v. Norman Harris,* Criminal No. H 80–29, Petition to Enter Plea of Guilty at 2 (D.Conn. Dec. 15, 1980); *Id.,* Transcript of Change of Plea Proceeding at 10–13 (Dec. 22, 1980). On the interplay of 15 U.S.C. § 1984 and 15 U.S.C. § 1990c, *see* note 1, *supra.*

to the court at Harris' sentencing, counsel for Harris conceded that his client's offense was one involving dishonesty, characterizing it as "a selling kind of thing, which clearly is dishonest to a certain extent to the manufacturer when that's done." [5]

As recognized by Congress, the reading on an odometer communicates vital information concerning the value of a motor vehicle. Although in enacting 15 U.S.C. § 1981 *et seq.* Congress explicitly referred only to purchasers, both purchasers and manufacturers necessarily rely on the information conveyed by a reading of an odometer. To alter or disconnect an odometer, so as to understate the number of miles actually traveled, is to make a non-verbal false statement about the value of the vehicle. A violation of the statute against such tampering is, by its nature, a crime involving "dishonesty or false statement," for the purposes of Rule 609(a)(2), F.R.Evid. Such a violation of 15 U.S.C. §§ 1984 and 1990c involves dishonesty and false statement to at least as great an extent as the possession and interstate transportation of untaxed cigarettes, *United States v. Apuzzo, supra,* 555 F.2d at 306, or the importation of cocaine by means of false statements to customs officials, *United States v. Hayes, supra,* 553 F.2d at 827–28, or the willful failure to file income tax returns, *United States v. Klein, supra,* 438 F.Supp. at 485, convictions for which have been held admissible as impeachment evidence under Rule 609(a)(2). A violation of 15 U.S.C. §§ 1984 and 1990c is thus a crime involving "dishonesty or false statement" according to the principles developed by Congress and applied by courts within the Second Circuit.

■ Once a court has found that a crime involves dishonesty or false statement under Rule 609(a)(2), the court lacks discretion to deny admission, for purposes of impeachment, of evidence of a conviction for that offense. *United States v. Hayes, supra,* 553

---

F.2d at 827.[6] Accordingly, if defendant Harris testifies at the trial of the bank-related charges, the court shall permit the government to introduce, for purposes of impeaching Harris' credibility only, evidence of Harris' prior conviction for a violation of 15 U.S.C. §§ 1984 and 1990c.

It is so ordered.

the probative value of admitting this evidence outweighs its prejudicial effect to the defendant[.]" *See* 3 Weinstein's Evidence ¶ 609[03a] (1978).

---

**5.** *See* note 3, *supra.*

**6.** In contrast, when evidence of a felony conviction is offered for impeachment purposes pursuant to Rule 609(a)(1), F.R.Evid., the court will exercise its discretion "to determin[e] that