**UNITED STATES v. MORAN.**

No. 140, Docket 22207.

United States Court of Appeals
Second Circuit.

Argued Jan. 9, 1952.

Decided Feb. 25, 1952.

Joseph Leary Delaney, New York City, Henry G. Singer, Brooklyn, N. Y., and Peter J. Donoghue, New York City, on the brief, for appellant.

Myles J. Lane, U. S. Atty., New York City, Eugene F. Roth, Chief, Criminal Division, and Thomas F. Burchill, Jr., and Norman S. Beier, Asst. U. S. Attys., all of New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and CHASE and FRANK, Circuit Judges.

SWAN, Chief Judge.

The appellant was convicted of violating the perjury statute, 18 U.S.C.A. § 1621, in testifying falsely to a material matter before a duly created subcommittee of the United States Senate's Special Committee to Investigate Organized Crime in Interstate Commerce.[1] The appellant's testimony was given in New York City on March 16, 1951 before a subcommittee of which Senator Kefauver was chairman. Before this subcommittee Moran testified that while he was First Deputy Fire Commissioner a man named Louis Weber had visited him "possibly three" times. "There might have been one or two more than that. But my recollection is there would be about three." This testimony, alleged to be knowingly false, formed the only count submitted to the jury, the court having ruled that the prosecutor must elect on which of the three counts of the indictment to proceed. The jury returned a verdict of guilty, and the court imposed the maximum sentence of five years imprisonment and a fine of $2,000.

Upon his appeal the defendant contends (1) that the trial was unfairly conducted, (2) that irrelevant and prejudicial evidence was erroneously admitted, (3) that the

---

1. Senate Resolution 202, passed on May 3, 1950 authorized and directed a special committee of five members "to make a full and complete study and investigation of whether organized crime utilizes the facilities of interstate commerce or otherwise operates in interstate commerce in furtherance of any transactions which are in violation of the law of the United States or of the State in which the transactions occur, and if so, the manner and extent to which, and the identity of the persons, firms, or corporations by which such utilization is being made, what facilities are being used and whether or not organized crime utilizes such interstate facilities or otherwise operates in interstate commerce for the development of corrupting influences in violation of the law of the United States or of the laws of any State * * *".

The Resolution further provided that "a majority of the members of the committee, or of any subcommittee thereof, shall constitute a quorum for the transaction of business, except that a lesser number to be fixed by the committee, shall constitute a quorum for the purpose of taking sworn testimony."

At a meeting of the committee on September 6, 1950, it was duly resolved that the Chairman, Senator Kefauver, "be au-

number of Weber's visits was not a "material matter," (4) that the proof was insufficient under the special rule applicable in perjury trials, and (5) that the alleged perjury was not committed before "a competent tribunal."

The trial began May 3, 1951. The appellant's first claim of unfairness is the court's refusal to grant a motion to postpone it until October. The case was originally set for trial on April 19, 1951. At the request of defense counsel it was delayed to May 3rd. On May 1st the Senate Committee released for publication in the press a report which mentioned Moran numerous times. Because of this report and the wide publicity by radio and television given to the subcommittee hearing at which Moran testified, counsel urged that it would be impossible to get a jury uninfluenced by such unfavorable publicity, and moved that the trial be put over to the October term. No change of venue was requested. The motion was denied. Neither the Committee's report nor the newspapers' comments on it are in the record, so that we cannot judge whether they supplied any basis for counsel's apprehension. But the selection of the jurors on the *voir dire* showed conclusively that his apprehension was unjustified. Only 27 talesmen were questioned in obtaining a jury satisfactory to both sides. Of the 12 jurors selected only two had read anything about the case in the newspapers, and two had seen on television part of the subcommittee hearings but not any part related to Moran. There was no abuse of discretion in denying defendant's motion to postpone the trial.

The second claim of unfairness relates to alleged prejudicial statements made by the prosecutor in his opening to the jury. No objection was made to any of the prosecutor's remarks at the time, but when the Government rested its case, the defendant moved for a mistrial because "there has been no attempt to prove certain inflammatory statements made by the prosecutor."

When asked by the court to be more specific counsel referred to remarks about "this policy business" and the relationship between "the slimy underworld and the politicians." The subject of an alliance between criminals and politicians was first mentioned by the prosecutor in describing the scope of the Senate Committee's investigation. Proof on that subject was presented. In our opinion the opening statement did not exceed the bounds of propriety. Assuming that despite the failure to register timely objection, the defendant could move for a mistrial, we cannot say that when the opening was made the prosecutor did not intend to prove the statements he made. Compare United States v. Lanza, 2 Cir., 85 F.2d 544, 548, certiorari denied 299 U.S. 609, 57 S.Ct. 235, 81 L.Ed. 449. In any event, we regard any possible prejudice from the opening as swept away by the court's specific charge, at the defendant's request, that "Any statements made by counsel unless supported by evidence are not to be considered by you in your deliberations in this case."

The appellant next contends that error was committed in receiving evidence of the defendant's intimate acquaintance with former Mayor O'Dwyer and of Weber's convictions of "policy" gambling in 1927 and conspiracy in 1938. Counsel argues that such proof was offered solely to besmirch the defendant and violates the rule that an attack upon a defendant's character is not permitted unless he has chosen to place his reputation or character in issue. But counsel misconceives the purpose of this evidence. It was not character evidence; it was relevant to prove that Moran was a man in high influential public office and that Weber was a man convicted of "policy" activities. They had known each other for many years. Such a relationship tended to show the materiality of the statements made to the subcommittee investigating the link between politics and crime, and establish a motive on the part of

thorized at his discretion to appoint subcommittees of one or more senators, of whom one member will be a quorum for

the purpose of taking testimony * * *."

Moran for minimizing the number of Weber's visits to him.

■■ Appellant also says that testimony by Mr. Halley and Mr. Klein, counsel for the subcommittee, relating to the scope of the Committee's authority to investigate organized crime was erroneously admitted. The Senate Resolution itself was the final authority, of course, but this testimony showed in concrete terms what the Committee was trying to do and the scope of its investigations. As such it was relevant and competent. The appellant also says that the jury should not have heard this testimony because the issue of materiality was for the court alone, but he did not object to the testimony on this ground. The appellant objects that in defining the scope of the Committee's activities Mr. Halley referred to "extortion, waterfront racketeering, murder and many other things," and this evidence could serve no purpose but to create prejudice. The statement that the Committee was investigating crimes of this character was irrelevant to the case on trial but we fail to see how it could have prejudiced the defendant whose only alleged connection was with Weber, a gambler.

■■ During the trial the government asked to show a ten minute film, with sound track removed, of Moran testifying before the subcommittee. This film was exhibited to the jury without any opportunity by defense counsel to see it first. Such a procedure was highly irregular, but unless failure to see it in advance deprived appellant of an opportunity to make a valid objection to the exhibit he was not prejudiced. No such objection could have been made. The film was admissible to show the defendant's demeanor when testifying before the subcommittee. This was important because counsel for appellant had inferred that so much confusion existed that the defendant might well have made a misstatement in good faith. Any possible objection that the film should have shown the three hour proceeding rather than a ten minute speed-up could have been remedied by counsel's request to show the entire proceeding or at least warn the jury that they had seen a shortened version, but no such request was made.

■ We pass next to the contention that the number of times Weber visited Moran or the fact that he visited him at all was immaterial to the Committee's investigation. We disagree. The authorized investigation covered a broad field, as appears from the Resolution creating the Committee. The test of materiality of false testimony is whether the testimony has a natural effect or tendency to influence, impede or dissuade the investigating body from pursuing its investigation. Woolley v. United States, 9 Cir., 97 F.2d 258, 262, certiorari denied 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391; Carroll v. United States, 2 Cir., 16 F.2d 951, 953, certiorari denied 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880; United States v. Goldstein, 2 Cir., 168 F.2d 666, 671; Blackmon v. United States, 5 Cir., 108 F.2d 572, 573. Such was the case here. Part of the Committee's investigation concerned the relationship between public officials and organized crime. Moran was an official; Weber a convicted gambler. The number of times they met could well have a bearing on the intimacy of their relations, and false statements by Moran as to the frequency of those meetings could thwart or impede the inquiry and prevent disclosure of other facts. The issue of materiality was left to the jury, but this was not an error of which the appellant can complain; he himself asked for it in his requests to charge. Moreover, in refusing to direct a verdict for defendant on the question of materiality and permitting the jury to decide the question, the court implicitly ruled that the matter was material. In any event appellant was not prejudiced by the submission of this question for the jury should have been instructed that it was material. Blackmon v. United States, 5 Cir., 108 F.2d 572, 574; see also United States v. Bianco, 2 Cir., 96 F.2d 97, 98.

■ It is further argued that there was not sufficient proof to satisfy the special perjury rule requiring two witnesses or one witness plus corroborating circumstances. The proof, however, abundantly establishes a *prima facie* case against the defendant.

The jury could have found that one witness admitted Weber to Moran's office about 30 times during the period in question, another some 15 other times, and that a third witness testified that he had admitted Weber some 50 times when no other receptionist was present. None of the witnesses could specify particular dates on which Weber's visits occurred. But this was not necessary to prove the falsity of Moran's testimony that Weber had called on him only three to five times during the period in question. The testimony of each of the witnesses was corroborative of that of the others. United States v. Hiss, 185 F.2d 822, 824, 830–831, certiorari denied 340 U.S. 948, 71 S.Ct. 532, 95 L.Ed. 683.

Lastly appellant argues that the subcommittee was not a competent tribunal, first, because only one committee member was definitely proved to have been present when Moran testified; and secondly because the hearing lacked proper decorum. Neither point has any merit. The Senate Resolution authorized the Committee to make a lesser number than a majority of the five members a quorum for taking testimony. By appropriate action the Committee authorized the appointment of subcommittees of one or more members to take testimony, one member being a quorum. Under such an authorization one member may constitute a quorum. See Mr. Justice Jackson's dissent in Christoffel v. United States, 338 U.S. 84, 91, 69 S.Ct. 1447, 1449, 93 L.Ed. 1826; nor was the hearing so lacking in decorum because of the microphones, television cameras and photographers that it can not be regarded as "a competent tribunal". Opinions may differ as to whether such procedure is better calculated to achieve publicity for the investigators than to promote their investigations. But on the record before us no facts have been proved which would justify holding that the tribunal was incompetent.

Judgment affirmed.