## UNITED STATES v. WEBER.

No. 239, Docket 22393.

United States Court of Appeals
Second Circuit.

Argued April 18, 1952.

Decided June 5, 1952.

James F. Ryan, Brooklyn, N. Y., for appellant.

Myles J. Lane, U. S. Atty., New York City, Thomas F. Burchill, Jr., Norman S. Beier and John M. Foley, Asst. U. S. Atty., New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

SWAN, Chief Judge.

The appellant was convicted of perjury in testifying falsely before the so-called Kefauver Committee in New York City on March 16, 1951 that he did not know James J. Moran. At the trial evidence was presented that the Kefauver Committee was a duly created subcommittee of the United States Senate's Special Committee to Investigate Organized Crime in Interstate Commerce.[1] The appellant was sentenced to five years imprisonment and a fine of $2,000. He has been admitted to bail pending his appeal.

The appellant first contends that error was committed in denying motions to dismiss the indictment because no evidence was adduced before the grand jury as to (1) the competency of the subcommittee before which he testified, and (2) the materiality of the alleged false testimony. Before the trial commenced, the appellant moved to dismiss the indictment for insufficiency of the evidence presented to the grand jury, or in the alternative for an inspection of the minutes. The accompanying affidavit advanced no facts in sup-

1. See United States v. Moran, 2 Cir., 194 F.2d 623.

port of the application. In denying the motion the district judge stated that in essence it was "a fishing expedition." We see no error in denial of the motion. A mere request to inspect the minutes, without any statement of facts indicating insufficiency of the evidence, is not enough to require the court to inspect the minutes. There is a presumption that the grand jury acted on sufficient evidence. United States v. Texeira, 2 Cir., 162 F.2d 169, 170.

■ In the course of the trial counsel for the defendant asked each of the eight witnesses for the prosecution whether he had appeared before the grand jury. Only three had so appeared. At the close of the government's case, the defendant requested that the grand jury minutes be marked for identification, which was denied, and renewed his motion to dismiss the indictment for insufficiency of the evidence presented to the grand jury. This was also denied. Because the three witnesses who admitted appearing before the grand jury did not include Arnold Schubert, a stenographer, who was called at the trial for the purpose of introducing a resolution which gave Senator Kefauver authority to sit as a committee of one and to swear witnesses, nor Rudolph Halley, counsel to the committee who testified at the trial about Senate Resolution 202, the appellant argues that there was no evidence presented to the grand jury as to the competency of the subcommittee and its authority to administer the oath. This is a complete *non sequitur*. Proof of the subcommittee's competency may have been made by exhibits or by other witnesses. As already noted, there is a presumption that a grand jury acted on sufficient evidence in returning an indictment. Such presumption is not overcome merely by showing that some of the trial witnesses did not appear before the grand jury, where the competency of the tribunal may have been otherwise established.

The appellant's motion that this court call for the production of the grand jury minutes and inspect them is denied.

The appellant next contends that the question whether Weber knew Moran is not shown to have been material to the subcommittee's investigation. In United States v. Moran, 2 Cir., 194 F.2d 623, we held that the intimacy of Moran's relations with Weber was relevant and that false testimony as to the frequency of their visits might impede the investigation. In that case there was proof that Weber was a convicted "policy" gambler. No such proof is present in the case at bar. However, it appears from Mr. Halley's testimony that the committee was investigating Moran and his associations. We think the committee was entitled to find out whether Weber knew Moran, even if Weber was not shown to be a convicted gambler. Mr. Halley also testified: "We had certain specific information, which has never become public" concerning the policy racket in New York. "In that connection we called Louis Weber." If this testimony was properly admitted, the materiality of questioning him as to his acquaintance with Moran is apparent.

■ The appellant moved to strike out Mr. Halley's testimony and urges that denial of the motion is reversible error. He argues that the testimony casts an aspersion on his character which may not be done unless he has chosen to place his character or reputation in issue. But counsel misconceives the purpose of this evidence. Testimony that Weber was called in connection with the subcommittee's investigation of the policy racket was not offered to attack his character but because it was relevant to the question of the materiality of his testimony. See United States v. Moran, 2 Cir., 194 F.2d 623, 625. The question of materiality is for the court. The appellant could have asked that the jury be instructed not to consider it, but his objection to the evidence was not so limited and one of his requests to charge submitted materiality to the jury. Since the evidence was competent for the court to consider, we think there was no error in denying the motion to strike.

Several other objections to evidence as well as exceptions to the charge are without merit and deserve no discussion.

■ Finally, it is urged that error was committed in denial of a motion to with-

draw a juror and declare a mistrial. This motion was made in chambers on the second day of the trial. On the first day nothing had been done except to impanel the jury. That evening and the next morning several New York newspapers published stories of the impanelling of the jury and alleged that Weber had a prior criminal record, and one paper published a scandalous cartoon. The motion was based on these derogatory newspaper articles. There was no assertion that any of the jurors had read the articles and no request that they be interrogated to ascertain whether they had. Such comments by newspapers during the pendency of a criminal trial are inexcusable.[2] In the case at bar the trial court's only remedies were either to caution the jury not to be influenced by anything seen in the newspapers or to declare a mistrial. Here the court gave such a caution. We think there was no abuse of discretion in denying a mistrial. United States v. Leviton, 2 Cir., 193 F.2d 848, 857, certiorari denied U.S., 72 S.Ct. 860.

2. In England it is probable that the publishers would be severely penalized. See cases cited in Maryland v. Baltimore Radio Show, 338 U.S. 912, 921–936, 70 S.Ct. 252, 94 L.Ed. 562.