101 F.3d 1392
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
Jin Tang HUANG, Defendant-Appellant.
 No. 95-1535.
 United States Court of Appeals,
Second Circuit.
 July 11, 1996.
 
 James E. Neuman, New York City, for Appellant.
 James Walden, Assistant United States Attorney for the Eastern District of New York, Brooklyn, NY, for Appellee.
 MINER, JACOBS, PARKER, Circuit Judges.
 
 
 1
 UPON CONSIDERATION of this appeal from a judgment of the United States District Court for the Eastern District of New York, it is hereby
 
 
 2
 ORDERED, ADJUDGED, AND DECREED that the judgment be and it hereby is AFFIRMED.
 
 
 3
 This cause came on to be heard on the transcript of record and was argued by counsel.
 
 
 4
 Defendant-appellant Jin Tang Huang appeals from a judgment entered in the United States District Court for the Eastern District of New York (Amon, J.) convicting him, following a jury trial, of conspiracy to distribute heroin and to possess heroin with intent to distribute, in violation of 21 U.S.C. § 846, and distribution of heroin and possession of heroin with intent to distribute, in violation of 21 U.S.C. § 841. The district court sentenced him to a 74-month term of imprisonment, a five-year term of supervised release, and a $100 special assessment.
 
 
 5
 Evidence at trial showed that Huang was involved in a heroin distribution scheme with two other individuals--John Wong and You Ning Zheng. In January of 1995, Zheng asked Wong to find a buyer for about 700 grams of heroin. On February 24, 1995, Drug Enforcement Administration ("DEA") agents arrested Wong after he provided a confidential informant with about 350 grams of heroin. Wong then agreed to cooperate with DEA agents, and he made monitored telephone calls to Zheng. Zheng told Wong that he needed the proceeds from the sale of the heroin immediately because his supplier was pressuring him for the money. Zheng told Wong that he did not "even dare to return the beeper calls" from his supplier. Zheng also stated that the money owed to his supplier was "two seven five," which, according to Wong, meant $27,500.
 
 
 6
 Zheng subsequently was arrested by DEA agents on February 27, 1995. The agents seized an electronic pager from him, and, at the time of the arrest, Huang's cellular telephone number was retained in the pager's display. Zheng agreed to cooperate with the DEA agents, and he made monitored telephone calls to Huang. In one of the telephone calls, Zheng told Huang, "[T]hat stuff is pretty good, is there any more?" Huang replied, "That's alright, we'll talk when we meet, okay." Zheng arranged to meet Huang in front of Wong's apartment building.
 
 
 7
 At the meeting, Zheng wore a recording device. According to the transcript of the conversation that ensued between Huang and Zheng, Huang complained that all the money was in "small denomination bills." After Zheng told Huang that he had brought all the money, Huang asked, "Two seven five?" Then, after Zheng asked if Huang had any more "stuff," Huang told him to "[w]ait till next time." In addition, Zheng stated, "[I]t's like almost 200 degree," to which Huang replied, "Ah." According to testimony at trial, the term "two seven five" meant $27,500, the word "stuff" was slang for heroin, and the phrase "200 degree" referred to the quality of the heroin.
 
 
 8
 Following this conversation, DEA agents arrested Huang. His jury trial commenced on May 15, 1995. Following a hearing in which the court determined that there was a sufficient basis for the identification, Agent Michael Shum identified Huang's voice on the audio tape recordings of the conversations between Huang and Zheng. Thereafter, Huang argued that an attribution on one of the transcripts of the recordings--Huang's response of "Ah" to Zheng's statement that "it's like almost 200 degree"--was inaudible and should be excluded. The court held an in camera hearing in which John Lau, the translator who had transcribed the tapes, testified that he had heard the response, "Ah," and that it was attributable to Huang. The court then received in evidence the transcripts with the attribution noted.
 
 
 9
 The jury returned its verdict on May 18, 1995, finding Huang guilty on all counts charged against him. Huang was sentenced principally to a 74-month term of imprisonment.
 
 
 10
 On appeal, Huang argues that the evidence was insufficient to support his conviction. We disagree. "It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a heavy burden." United States v. Martinez, 54 F.3d 1040, 1042 (2d Cir.) (quotation omitted), cert. denied, 116 S.Ct. 545 (1995). "[I]f the evidence ... suffices to convince any rational trier of fact of the defendant's guilt beyond a reasonable doubt, then [the defendant's] conviction must stand." Id.
 
 
 11
 In the present case, Wong testified that Zheng had asked him to find a buyer for heroin, and that the money owed to Zheng's supplier was $27,500. In the recorded conversation between Huang and Zheng, Huang asked if the amount to be paid was "two seven five." In addition, after Zheng asked for more "stuff," Huang told him to "[w]ait till next time." From this conversation, with its repeated references to drug terminology, the jury could infer that Huang had supplied heroin to Zheng and that Huang subsequently attempted to obtain the proceeds from the sale of the heroin. In addition, the government introduced telephone records that showed that Huang had contacted Zheng's pager a number of times in the days following Wong's arrest, which was the same period of time in which Zheng was trying to collect the money from Wong. As Zheng attempted to collect the money, Zheng told Wong that his supplier was pressuring him to collect the proceeds from the heroin sale. Thus, the telephone records also demonstrated that Huang was the supplier of the heroin. Accordingly, there was sufficient evidence to support Huang's conviction.
 
 
 12
 Huang also contends that the audio tape recordings of the conversations with Zheng were not properly authenticated. We disagree. "A telephone conversation is admissible in evidence if the identity of the speaker is satisfactorily established." United States v. Albergo, 539 F.2d 860, 863-64 (2d Cir.), cert. denied, 429 U.S. 1000 (1976). In United States v. Cambindo Valencia, 609 F.2d 603 (2d Cir.1979), cert. denied, 446 U.S. 940 (1980), we held that "[t]he standard for the admissibility of an opinion as to the identity of a speaker on tape is merely that the identifier has heard the voice of the alleged speaker at any time." Id. at 640.
 
 
 13
 In the present case, Agent Shum reviewed the tape-recorded conversations containing Huang's voice several times on February 27, 1995. On that same day, after Huang was arrested, Shum personally heard Huang speak for a period of at least 20 to 30 minutes. Because Shum had a substantial opportunity to become familiar with Huang's voice, the audio tapes were properly authenticated.
 
 
 14
 We also reject Huang's contention that the district court erred in admitting the transcript containing his response, "Ah," to Zheng's comment that the heroin was "like almost 200 degree." In United States v. Chiarizio, 525 F.2d 289 (2d Cir.1975), we stated that, "where the defense and prosecution disagree as to the contents of the tape, the proper procedure is for the jury to receive transcripts of both sides' versions." Id. at 293; see also United States v. Carson, 464 F.2d 424, 437 (2d Cir.) (where in camera hearing was held and both sides' versions of the transcripts were received, "it was not an abuse of discretion to admit the tapes and transcripts into evidence"), cert. denied, 409 U.S. 949 (1972).
 
 
 15
 In the present case, the district court held an audibility hearing outside the presence of the jury. John Lau, the translator who transcribed the tapes, testified that he heard the word, "Ah," spoken on the tape recording and that it was Huang's voice. Thereafter, the district court received in evidence the government's version of the transcript with the disputed attribution, but the court also offered Huang the opportunity to submit his own version of the transcript. In view of the procedure followed by the district court, "it was not an abuse of discretion to admit the [transcript containing the attribution by Huang] into evidence." See Carson, 464 F.2d at 437.